1  Dean A. Reeves (SBN 150558)
2    dreeves@afrct.com
   ANGLIN  FLEWELLING  RASMUSSEN
3    CAMPBELL & TRYTTEN, LLP
   199 South Los Robles Avenue, Suite 600
4  Pasadena, California  91101-2459
   Tel.:  (626) 535-1900 | Fax: (626) 577-7764
5
6  Attorneys for Defendant
   WELLS FARGO BANK, N.A., successor by
7  merger with Wells Fargo Bank Southwest,
   N.A., f/k/a Wachovia Mortgage, FSB, f/k/a
8  World Savings Bank, FSB ("Wells Fargo")

9
                UNITED STATES DISTRICT COURT
10
        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
11

12  CHARLES W. BARTLETT and          Case No.:  2:13-cv-06397-CAS (JEMx)
13  SANDRA L. BARTLETT,
    INDIVIDUALLY, and AS TRUSTEES    [Assigned to the Hon. Christina A.
14  OF THE BARTLETT FAMILY TRUST     Snyder]
    DATED AUGUST 16, 2005,
15
16          Plaintiffs,              **NOTICE OF MOTION AND
                                     MOTION BY WELLS FARGO
17     vs.                           BANK, N.A. TO DISMISS
                                     COMPLAINT; MEMORANDUM
18  WELLS FARGO BANK, N.A., a        OF POINTS AND AUTHORITIES**
19  business entity form unknown, NDEX
    WEST, LLC, a business entity form   [Filed concurrently herewith Request
20  unknown, and DOES 1-100, inclusive, for Judicial Notice and Proposed Order]

21          Defendants.              Date: October 21, 2013
                                     Time: 10:00 a.m.
22                                   Ctrm: 5
23

24
25
26
27
28

**TO PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 21, 2013, at 10:00 a.m., in the United States District Court, Courtroom 5, located at 312 North Spring Street, Los Angeles, California 90012, the Honorable Christina A. Snyder presiding, defendant Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo") will move to dismiss the Complaint.

The following are the grounds for this motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

1.      <u>First Claim for Relief: Violation of California Civil Code section 2923.6</u>.

Plaintiffs fail to state a claim for relief because: (i) Plaintiffs lack standing and the Court lacks jurisdiction to enforce the National Mortgage Settlement Consent Judgment; (ii) this state law claim is preempted by the Home Owner's Loan Act ("HOLA"); (iii) the statute does not apply; (iv) Plaintiffs have failed to allege any prejudice by virtue of the alleged breach; and (v) Plaintiffs fail to allege facts sufficient to state a claim upon which relief can be granted.

2.      <u>Second Claim for Relief: Violation of California Business & Professions Code section 17200</u>.

Plaintiffs fail to state a claim for relief because: (i) Plaintiffs lack standing and the Court lacks jurisdiction to enforce the National Mortgage Settlement Consent Judgment; (ii) the claim is preempted by the HOLA; (iii) the allegations of the complaint fail to plead any unlawful, unfair or fraudulent acts; and (iv) Plaintiffs have no standing to bring the claim.

3.      <u>Third Claim for Relief: Negligence</u>.

Plaintiffs fail to state a claim for relief because: (i) Plaintiffs lack standing and the Court lacks jurisdiction to enforce the National Mortgage Settlement Consent Judgment; (ii) this state law claim is preempted by HOLA; and (iii)

1  Plaintiffs fail to allege facts sufficient to state a claim upon which relief can be
2  granted.

3          4.      <u>Fourth Claim for Relief: Demand for Accounting</u>.

4          Plaintiffs fail to state a claim for relief because: (i) this state law claim is
5  preempted by HOLA; and (ii) plaintiffs fail to allege facts sufficient to state a claim
6  upon which relief can be granted.

7          This motion will be based on this notice, the Memorandum of Points and
8  Authorities, the accompanying Request for Judicial Notice and exhibits thereto, the
9  documents on file in this action, the argument of counsel, and on such other
10 information as the Court may deem appropriate.

11         This motion is made following defendant's counsel's meet and confer with
12 Plaintiffs' counsel, pursuant to Local Civil Rule 7-3, on September 3, 2013.

13                                     Respectfully submitted,

14
15 Dated:  September 6, 2013          ANGLIN  FLEWELLING  RASMUSSEN
                                        CAMPBELL & TRYTTEN, LLP

16
17                                   By:    */s/  Dean A. Reeves*
                                          Dean A. Reeves
18                                        dreeves@afrct.com
19                                   Attorney for Defendant
                                     WELLS FARGO BANK, N.A., successor
20                                   by merger with Wells Fargo Bank
                                     Southwest, N.A., f/k/a Wachovia Mortgage,
21                                   FSB, f/k/a World Savings Bank, FSB
                                     ("Wells Fargo")
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

I.      INTRODUCTION................................................................................................1

II.     BACKGROUND INFORMATION AND PLAINTIFFS'
        ALLEGATIONS. ...............................................................................................1

        A.      Subject Loan and Non-Judicial Foreclosure on Property.....................1

        B.      History of Wells Fargo's predecessors in interest. ...............................2

        C.      Plaintiffs' allegations against Wells Fargo. .........................................2

III.    LEGAL STANDARD FOR MOTION TO DISMISS.......................................3

IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
        THE NATIONAL MORTGAGE SETTLEMENT CONSENT
        JUDGMENT. ......................................................................................................4

V.      PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE
        HOME OWNERS' LOAN ACT.........................................................................5

        A.      As A Federally Chartered Savings Bank, World Savings
                Operated Under The Home Owners' Loan Act ("HOLA").................5

        B.      OTS Regulations Promulgated Under HOLA Preempt Any
                State Laws Which Affect Loan Origination, Disclosures, And
                Lending Regulation................................................................................5

        C.      State Laws Preempted By HOLA. ........................................................6

        D.      Plaintiffs' Claim For Violations Of Civil Code § 2923.6 Is
                Preempted..............................................................................................7

        E.      The Application of HOLA Preempts The State Law Claims. .............10

VI.     PLAINTIFFS HAVE FAILED TO ESTABLISH ANY GROUNDS
        FOR RELIEF UNDER CALIFORNIA CIVIL CODE § 2923.6.................12

        A.      The Newly Enacted Civil Code § 2923.6 Does Not Apply
                Retroactively .....................................................................................12

B.    Plaintiffs Did Not Fully Comply With Civil Code § 2923.6 .............. 14

C.    The Statute Does Not Allow Plaintiffs To Litigate The
      Outcome Of Their Loan Modification Application. ........................... 15

VII.  PLAINTIFFS' SECOND CLAIM FOR VIOLATION OF BUSINESS
      AND PROFESSIONS CODE § 17200 FAILS. ............................................ 19

VIII. PLAINTIFFS' THIRD CLAIM FOR NEGLIGENCE FAILS ..................... 21

IX.   PLAINTIFFS DO NOT HAVE A RIGHT TO AN ACCOUNTING ........... 23

X.    CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amaral v. Wachovia Mortg. Corp.*,
692 F. Supp. 2d 1226 (E.D. Cal. 2010) .................................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 3

*Beall v. Quality Loan Serv. Corp.*,
2011 U.S. Dist. LEXIS 29184 (S.D. Cal. Mar. 21, 2011) ........................ 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 3

*DeLeon v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 8296 (N.D. Cal. 2011) .................................... 21

*DeLeon v. Wells Fargo Bank*, N.A.,
729 F. Supp. 2d 1119 (N.D. Cal. 2010) .............................................. 11

*Domnie v. Saxon Mortg.*,
2010 U.S. Dist. LEXIS 76816 (N.D. Cal. Jul. 14, 2010) ...................... 22

*Gomez v. Wachovia Mortg. Corp.*,
2010 U.S. Dist. LEXIS 3799, at **7-8 (N.D. Cal. Jan. 15, 2010) .......... 12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................... 20

*Martinez v. Welk Group, Inc.*,
2011 U.S. Dist. LEXIS 58718 (S.D. Cal. June 2, 2011) ....................... 19

*Melegrito v. CitiMortgage Inc.*,
2011 U.S. Dist. LEXIS 60447 (N.D. Cal. June 6, 2011) ....................... 20

*Murillo v. Aurora Loan Servs., LLC*,
2009 U.S. Dist. LEXIS 61791 (N.D. Cal. July 17, 2009) .................... 7, 8

*Nguyen v. Wells Fargo Bank, N.A.*,
749 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................... 7, 8

i

*Odinma v. Aurora Loan Servs.*,
  2010 U.S. Dist. LEXIS 28347 (N.D. Cal. Mar. 23, 2010) .................................. 8

*Parcray v. Shea Mortg., Inc.*,
  2010 U.S. Dist. LEXIS 40377, 2010 WL 1659369 (E.D. Cal. Apr. 23, 2010).... 7

*Sato v. Wachovia Mortg., FSB*,
  2011 U.S. Dist. LEXIS 75418 (N.D. Cal. July 13, 2011) ................................. 11

*Sharma v. Wachovia*,
  2011 U.S. Dist. LEXIS 1736 (E.D. Cal. Jan. 6, 2011) ................................. 10, 11

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................................................ 4

*Tamayo v. World Savs. Bank, FSB, et al.*,
  2009 U.S. Dist. LEXIS 73298 (S.D. Cal. July 23, 2009) ................................. 11

*Taquinod v. World Savings Bank, FSB*,
  2010 U.S. Dist. LEXIS 127677 (C.D. Cal. Dec. 2, 2010) .................................. 7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................... 20

*Zarif vs. Wells Fargo Bank, N.A.*,
  2011 U.S. Dist. Lexis 29867, at * 8, 9 (S.D. Cal. Mar. 23, 2011) .................... 11

**STATE CASES**

*Brea v. McGlashan*,
  3 Cal. App. 2d 454 (1934) ............................................................................ 23

*Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.*,
  20 Cal.4th 163 (1999) .................................................................................. 20

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) ................................................................................. 20

*Daro v. Superior Court*,
  151 Cal. App. 4th 1079 (2007) ..................................................................... 21

*Eddy v. Sharp*,
  199 Cal. App. 3d 858 (1988) ........................................................................ 22

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847 (2008) ................................................................. 19, 21

*Hellbaum v. Lytton S&L,*
  274 Cal. App. 2d 456 (1969) ......................................................................... 22

*Ingels v. Westwood One Broadcasting Services, Inc.,*
  129 Cal. App. 4th 1050 (2005) ..................................................................... 20

*Khoury v. Maly's of Cal., Inc.,*
  14 Cal. App. 4th 612 (1993) ......................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ............................................................................... 19

*Kritzer v. Lancaster,*
  96 Cal. App. 2d 1 (1950) .............................................................................. 23

*Lopez v. World Savings & Loan Ass'n,*
  105 Cal. App. 4th 729 (2003) ......................................................................... 5

*Mabry v. Superior Court,*
  185 Cal. App. 4th 208 (2010) ..................................................................... 7, 8

*Myers v. Philip Morris Cos., Inc.,*
  28 Cal. 4th 828 (2002) ................................................................................. 13

*Nymark v. Heart Fed. Sav. & Loan Assn.,*
  231 Cal. App. 3d 1089 (1991) ................................................................. 22, 24

*Price v. Wells Fargo Bank, Price v. Wells Fargo Bank,*
  213 Cal. App. 3d (1989) ............................................................................... 24

*San Pedro Lumber Co. v. Reynolds,*
  111 Cal. 588 (1896) ..................................................................................... 24

*Saunders v. Superior Court,*
  27 Cal. App. 4th 832 (1994) ......................................................................... 19

*Software Design and Application Ltd. v. Hoeffer & Arnolt Inc.,*
  49 Cal. App. 4th 472 (1996) ......................................................................... 22

*St. James Church of Christ Holiness v. Superior Court,*
  135 Cal. App.2d 352 (1955) ......................................................................... 24

*Stilwell v. Trutanich*,
    178 Cal. App. 2d 614 (1960) ........................................................... 23

*Teselle v. McLoughlin*,
    173 Cal. App. 4th 156 (2009) ......................................................... 23

*Trope v. Katz*,
    11 Cal. 4th 274 (1995) ..................................................................... 23

*Wellenkamp v. Bank of America*,
    21 Cal. 3d 943 (1978) ..................................................................... 22

**FEDERAL STATUTES**

12 U.S.C. §§ 1461, et seq. ..................................................................... 5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................... 10, 19, 20

Cal. Bus. & Prof. Code § 17204 ..................................................... 20

Cal. Civ. Code § 1717 ..................................................................... 23

Cal. Civ. Code § 2923.4(a) ......................................................... 15, 16

Cal. Civ. Code § 2923.5 ............................................................. 7, 8, 9

Cal. Civ. Code § 2923.6 ........................................................... passim

Cal. Civ. Code § 2923.6(b) ......................................................... 17, 18

Cal. Civ. Code § 2923.6(c) ............................................................. 15

Cal. Civ. Code § 2923.6(d) ............................................................. 15

Cal. Civ. Code § 2923.6(g) ...................................................... passim

Cal. Civ. Code § 2924 ....................................................................... 8

Cal. Civ. Code § 2924.12 ................................................................. 9

Cal. Civ. Code § 2924.12(i) ............................................................. 9

Cal. Civ. Code § 2924.12(b) ............................................................. 9

Cal. Civ. Code § 2924.17..................................................................... 9

Civil Code §§ 2923.5 and 2924 *et seq.*.............................................. 13

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................... 19, 20

**REGULATIONS**

12 C.F.R. § 545.2............................................................................. 5

12 C.F.R. § 560.2............................................................................. 5

12 C.F.R. § 560.2(b) ........................................................................ 6

12 C.F.R. § 560.2(b)(4) .................................................................... 6

12 C.F.R. § 560.2(b) (4), (7), (9), (10) ........................................... 10

12 C.F.R. § 560.2(b)(4) & (10)....................................................... 11

12 C.F.R. § 560.2(b)(4), and........................................................... 10

12 C.F.R. § 560.2(b)(5) ............................................................. 6, 12

12 C.F.R. § 560.2(b)(9) ............................................................. 6, 11

12 C.F.R. § 560.2(b)(10) ...................................................7, 8, 10, 11

61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)................................. 6

OTS regulation 560.2(b)(4), (5), (9) and (10) .................................. 6

**OTHER AUTHORITIES**

5 Witkin, *California Procedure*, Pleading, § 821 (5th Ed. 2008) ......................... 23

5 Witkin, *California Procedure*, Pleading, § 820 (5th Ed. 2008) .................... 23, 24

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

Even though Plaintiffs defaulted on their loan obligations over four years ago, they now seek to prevent the beneficiary of the Deed of Trust, Wells Fargo Bank, N.A. ("Wells Fargo") from completing the non-judicial foreclosure on the subject property, as permitted by the Deed of Trust and statute.  The complaint asserts claims against Wells Fargo that are expressly preempted by federal law, or seek to enforce rights that Plaintiffs do not possess.  Additionally, Plaintiffs attempt to enforce statutory obligations upon Wells Fargo, even though the conduct in question occurred in 2012 and the new statute referenced in the complaint did not go into effect until January 1, 2013.  Plaintiffs are essentially attempting to maintain their possession of the subject property without making any mortgage payments, by asserting claims against Wells Fargo that are not legally viable, and fail to provide Plaintiffs with any legitimate basis on which to enjoin foreclosure.

Accordingly, Wells Fargo respectfully requests that the Court grant its Motion to Dismiss, in its entirety, with prejudice.

## II.   BACKGROUND INFORMATION AND PLAINTIFFS' ALLEGATIONS.

### A.   Subject Loan and Non-Judicial Foreclosure on Property.

The subject property is located at 2085 Rosebay Street, Westlake Village, California (the "Property").  (Comp., ¶ 1.)  On January 20, 2006, Plaintiffs obtained a loan from World Savings Bank, FSB ("World Savings") (Wells Fargo's predecessor in interest) in the amount of $562,000.00.  (Comp., ¶ 41; Request for Judicial Notice ("RJN"), Exh. A.)  A Deed of Trust securing this loan was recorded against the Property with the Los Angeles County Recorder's Office on January 27, 2006.  (RJN, Exh. B.)

Beginning in January 2009, the monthly payments on the loan stopped, and the loan went into default.  (RJN, Exh. C.)  As a result of Plaintiffs' default, on

1   November 11, 2010, a Notice of Default was recorded with the Los Angeles County

2   Recorder's Office.  (RJN, Exh. C.)  Subsequently, on December 8, 2010, a

3   Substitution of Trustee of recorded naming NDEx West. LLC as the new trustee.

4   (RJN, Exh. D.)  A Notice of Trustee's Sale was then recorded on December 3, 2012,

5   setting an initial sale date for December 24, 2012.  (RJN, Exh. E.)

6          **B.     History of Wells Fargo's predecessors in interest.**

7          Wells Fargo's predecessor in interest and the lender on the subject loan, World

8   Savings, was a federal savings bank.  (*See* Certificate of Corporate Existence issued

9   by the Office of Thrift Supervision ("OTS"), dated April 21, 2006, RJN, Exh. F.)

10  World Savings was renamed Wachovia Mortgage, FSB on December 31, 2007, as

11  shown by a letter dated November 19, 2007 from the OTS.  (RJN, Exh. G.)  Effective

12  November 1, 2009, Wachovia Mortgage, FSB was converted to a national bank with

13  the name Wells Fargo Bank Southwest, N.A., and merged with and into Wells Fargo

14  Bank, N.A.  These events are confirmed in the Comptroller of the Currency's

15  ("OCC") Official Certification.  (RJN, Exh. H.)

16         **C.     Plaintiffs' allegations against Wells Fargo.**

17         Plaintiffs' contend that Wells Fargo's refusal to consider the borrowers'

18  application for a loan modification based on a claim of a "material change in their

19  financial circumstances," amounts to a violation of the National Mortgage

20  Settlement, which went into effect in April, 2012.  (Comp., ¶ 30.)  Additionally,

21  Plaintiffs' allege that in connection with the foreclosure on the Property, Wells

22  Fargo assessed fees and costs that were not authorized and were improperly

23  "marked-up."  (Comp., ¶¶ 33-39.)  Plaintiffs further allege that Wells Fargo

24  "wrongfully delayed Plaintiffs' modification request," and that Wells Fargo has

25  violated the revised and newly enacted Civil Code section 2923.6, in light of their

26  claimed "material change in financial circumstances."  (Comp., ¶¶ 58, 68-76.)

27  According to Plaintiffs, Wells Fargo's alleged wrongful conduct also constitutes a

28  breach of duty owed to Plaintiffs, and that they are entitled to an accounting, in order

1  to determine that actual amount that they are in arrears on the loan.  (Comp., ¶¶ 101,
2  116.)

3  **III.    LEGAL STANDARD FOR MOTION TO DISMISS.**

4          Although the complaint need not contain detailed allegations, its "[f]actual
5  allegations must be enough to *raise a right to relief above the speculative level . . .* on
6  the assumption that all the allegations in the complaint are true (even if doubtful in
7  fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007) (emphasis
8  added).  In short, it must allege "enough facts to state a claim to relief that is
9  *plausible on its face*."  *Id. at 570* (emphasis added).  The "plausibility" requirement
10 governs complaints in all federal civil actions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 883-
11 884 (2009).

12         In determining the "plausibility" of a complaint, the court must first identify
13 which statements in the complaint are factual allegations and which are legal
14 conclusions.  Courts are not bound to accept as true allegations that are legal
15 conclusions, even if cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 556
16 U.S. at 884 .  Second, the court, drawing "on its judicial experience and common
17 sense," must decide in the specific context of the case whether the factual allegations,
18 if assumed true, allege a *plausible* claim.  *Id.*   The plausibility standard is *not* the
19 equivalent to a "probability requirement," but requires more than a mere possibility
20 that the defendant has acted unlawfully.  *Id.*

21         To establish a "plausible" claim, the complaint must contain "more than labels
22 and conclusions" or "formulaic recitations of the elements of a cause of action."  *Bell*
23 *Atlantic Corp. v. Twombly*, 550 U.S. at 555.  "While legal conclusions can provide
24 the framework of a complaint, they must be supported by factual allegations."
25 *Ashcroft v. Iqbal*, 556 U.S. at 884.  Moreover, the factual allegations in the complaint
26 must be sufficient to nudge the plaintiff's "claims across the line from conceivable to
27 plausible . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570.  Under the standards
28 adopted by the Supreme Court, in order to be entitled to the presumption of truth, the

1    complaint "must contain allegations of underlying facts to give *fair notice* and to

2    enable the opposing party to *defend itself effectively*."  *Starr v. Baca*, 652 F.3d 1202,

3    1216 (9th Cir. 2011) (emphasis added).

4    **IV.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER**

5         **THE NATIONAL MORTGAGE SETTLEMENT CONSENT**

6         **JUDGMENT.**

7         Much of Plaintiffs' complaint advances the theory that Wells Fargo violated

8    the National Mortgage Settlement ("NMS") Consent Judgment (E.g., Comp. ¶¶ 25-

9    32, 82, 99-102.)  That argument is incorporated in most of Plaintiffs' claims for

10   relief.  (A copy of the Consent Judgment and the enforcement terms is attached to the

11   RJN as Exh. I.)  However, no claim can prevail under an attempt to enforce the

12   Consent Judgment as it is only enforceable in the U.S. District Court for the District

13   of Columbia and only by a party to the Consent Judgment or the Monitoring

14   Committee.  (RJN Exh. I, Enforcement Terms at Section E, "Servicer's obligations

15   under this Consent Judgment shall be enforceable solely in the U.S. District Court for

16   the District of Columbia . . . by any Party to this Consent Judgment or the Monitoring

17   Committee.").  The enforcement terms make is clear that Plaintiffs lacks standing to

18   enforce the Consent Judgment as nonparties, and this Court lacks subject matter

19   jurisdiction over the settlement.  As a result, to the extent that Plaintiffs' claims in the

20   complaint are based on allegations that Wells Fargo's conduct was in violation of the

21   Consent Judgment, all such allegations should be ignored for the purpose of

22   determining whether Plaintiff has alleged a viable claim against Wells Fargo.

23   Ultimately, all such claims must be dismissed to the extent they seek enforceable

24   rights under the Consent Judgment.

25   / / / /

26   / / / /

27   / / / /

28   / / / /

## V.     **PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY THE HOME OWNERS' LOAN ACT.**

### A.     **As A Federally Chartered Savings Bank, World Savings Operated Under The Home Owners' Loan Act ("HOLA").**

Plaintiffs obtained the subject loan from Wells Fargo's predecessor World Savings Bank, FSB in 2007.  (RJN, Exhs. A, B.)  World Savings was a federal savings bank regulated by the OTS.  (RJN, Exhs.F-H.)  As a federal savings bank, World Savings was organized and operated under HOLA.  12 U.S.C. §§ 1461, et seq.[1]

### B.     **OTS Regulations Promulgated Under HOLA Preempt Any State Laws Which Affect Loan Origination, Disclosures, And Lending Regulation.**

Through its regulatory authority, the OTS "occupies the entire field of lending regulation for federal savings associations."  12 C.F.R. § 560.2.  OTS regulations issued pursuant to HOLA are "intended to preempt all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision."  *Lopez v. World Savings & Loan Ass'n*, 105 Cal. App. 4th 729, 738 (2003); *see* 12 C.F.R. § 545.2.

---

[1]  HOLA still applies even though World Savings was ultimately merged into Wells Fargo Bank, N.A.  *Taguinod v. World Savs. Bank, FSB*, 755 F. Supp. 2d 1064, 1068-1069 (C.D. Cal. 2010) ("Wells Fargo's acquisition of World Savings Bank, FSB does not affect the HOLA preemption defense because the Complaint only addresses the transaction between Plaintiffs and World Savings Bank, FSB."); *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010) ("Where a national association, such as [Wells Fargo Bank, N.A.], acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA."); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) ("Wells Fargo notes that at the time the loan was to the DeLeons [plaintiff], 'World Savings Bank, FSB was a federally chartered savings bank organized and operating under HOLA' and observes correctly that the same preemption analysis would apply to any alleged misconduct after November 1, 2009, when the lender merged into a national savings banking association.").

1    Preemption analysis under HOLA first determines whether the type of state

2    law at issue appears on the list set forth in 12 C.F.R. § 560.2(b).  OTS Final Rule, 61

3    Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).  That regulation lists the types of state

4    laws that HOLA preempts.  If the type of state law in question appears on the list, the

5    analysis ends there and the law is preempted.

6         **C.    State Laws Preempted By HOLA.**

7    Among the regulations that are "so pervasive as to leave no room for state

8    regulatory control" are OTS regulation 560.2(b)(4), (5), (9) and (10).  These

9    regulations preempt state laws that "would impose requirements on federal savings

10   banks regarding":

11        **(b)(4)  The terms of credit, including amortization of**

12        **loans and the deferral and capitalization of interest**

13        **and adjustments to the interest rate, balance,**

14        **payments due**, or term to maturity of the loan, including

15        the circumstances under which a loan may be called due

16        and payable upon the passage of time or a specified event

17        external to the loan; 12 C.F.R. § 560.2(b)(4)

18        **(b)(5) Loan-related fees, including without limitations,**

19        **initial charges, late charges**, prepayment penalties,

20        servicing fees, and overlimit fees; 12 C.F.R. § 560.2(b)(5)

21        **(b)(9) Disclosure and advertising**, including laws

22        requiring specific statements, information, or other

23        content to be included in credit application forms, credit

24        solicitations, billing statements, credit contracts, or other

25        credit-related documents and laws requiring creditors to

26        supply copies of credit reports to borrowers or applicants;

27        12 C.F.R. § 560.2(b)(9)

28

**(b)(10) Processing, origination, servicing**, sale or purchase of, or investment or participation in…**mortgages**; 12 C.F.R. § 560.2(b)(10).

**D.**     **Plaintiffs' Claim For Violations Of Civil Code § 2923.6 Is Preempted**

Plaintiffs' first claim for relief is based on an asserted violation of the recently adopted California Home Owner's Bill of Rights (HBOR), specifically Civil Code section 2923.6(g).  (Comp., ¶¶ 65-76.)  According to Plaintiffs, Wells Fargo failed to reevaluate Plaintiffs for a loan modification following a material change in their financial circumstances.  (Comp., ¶ 70.)  On its face, the statute burdens lending by requiring a bank to consider modifying an existing loan and by preventing its ability to enforce a security interest until that process has been completed.  These requirements clearly fall within the ambit of C.F.R. § 560.2(b)(10) concerning the processing and servicing of mortgages and so are preempted.

The HBOR replaces and greatly expands the burdens and remedies set forth in former Civil Code section 2923.5, which also imposed conditions on a lender's ability to foreclose.  District Courts considering that statute generally held that it was preempted, both before and after *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010).  *See*, *e.g.*, *Taquinod v. World Savings Bank, FSB,* 2010 U.S. Dist. LEXIS 127677, at *20 (C.D. Cal. Dec. 2, 2010); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022 (N.D. Cal. 2010); *Beall v. Quality Loan Serv. Corp.*, 2011 U.S. Dist. LEXIS 29184, at *22 (S.D. Cal. Mar. 21, 2011); and *Parcray v. Shea Mortg., Inc.*, 2010 U.S. Dist. LEXIS 40377, 2010 WL 1659369, at *9 (E.D. Cal. Apr. 23, 2010). Those holdings are instructive with respect to the application of HOLA to Civil Code 2923.6.

One of the numerous pre-*Mabry* decisions was *Murillo v. Aurora Loan Servs.*, *LLC*, 2009 U.S. Dist. LEXIS 61791 (N.D. Cal. July 17, 2009), where the court dismissed a § 2923.5 claim, with prejudice, that alleged "Defendants failed to

properly file a declaration with their notice of default."  The district court held that "[a]s applied, Plaintiffs' § 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage.  As such, the Court finds that Plaintiffs' § 2923.5 claim is preempted under HOLA."  *Murillo*, 2009 U.S. Dist. LEXIS 61791, at *11; *See also*, *Odinma v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 28347, at *23 (N.D. Cal. Mar. 23, 2010) (The Court held that a § 2923.5 claim "concerns the processing and servicing of Plaintiff's mortgage and is therefore preempted by HOLA.")

In *Phat Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022 (N.D. Cal. 2010), the court relied in part on *Murillo* to find Section 2923.5 to be preempted even after *Mabry*.  *Id.* at 1032-33 (listing the federal district court decisions concluding that Section 2923.5 is preempted because the state law deals with contacting the borrower and requires a specific declaration in the Notice of Default such that it falls squarely within the scope of HOLA's Section 560.2(b)(10)).

Given the additional remedies now available to borrowers for alleged violations of the HBOR, a finding of preemption by HOLA is warranted not only by the many previous decisions by the District Courts with respect to section 2923.5, but also by the very holding in *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 226-232 (2010).  Prior to January 1, 2013, the *only* remedy available for a violation of the non-judicial foreclosure laws codified under Civil Code §§ 2923.5 and 2924 *et seq*. was equitable relief (*i.e.*, an order enjoining the foreclosure sale (prospectively) or rescinding it (retrospectively)).  There was no right to, for example, a loan modification or monetary damages. *Mabry*, 185 Cal. App. 4th at 232.  As a result, the *Mabry* court held that § 2923.5 was not preempted by HOLA because it was limited to affording borrowers only more time when lenders do not comply with the statute. *Id.* at 226.  Specifically, the *Mabry* court stated "[w]e emphasize that we are able to come to our conclusion that section 2923.5 is not preempted by federal banking regulations because it *is*, or can be construed to be, very narrow."  *Id.* at 231 (emphasis in original).

1    Considering the substantial additional remedies now available for violation of

2  the HBOR, a narrow interpretation cannot possibly save the statute from preemption.

3  *See* Civil Code §§ 2924.12, and 2924.17.  These new remedies are quite unlike the

4  limited relief available under the previous section 2923.5.  For example, Civil Code

5  section 2924.12(b) provides for the imposition of monetary damages against a lender

6  or servicer:

7             A mortgage servicer, mortgagee, trustee, beneficiary, or

8             authorized agent shall be liable to a borrower for actual

9             economic damages pursuant to Section 3281, resulting

10            from a material violation of Section 2923.55, 2923.6,

11            2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that

12            mortgage servicer, mortgagee, trustee, beneficiary, or

13            authorized agent where the violation was not corrected

14            and remedied prior to the recordation of the trustee's deed

15            upon sale. If the court finds that the material violation was

16            intentional or reckless, or resulted from willful

17            misconduct by a mortgage servicer, mortgagee, trustee,

18            beneficiary, or authorized agent, the court may award the

19            borrower the greater of treble actual damages or statutory

20            damages of fifty thousand dollars ($50,000).

21    Additionally, a lender may now be required to pay attorney's fees to a

22  borrower *who merely obtained injunctive relief* in an action brought to enforce

23  section 2923.6. Civ. Code § 2924.12(i).

24    Since the remedies that can be imposed for violation of the HBOR exceed a

25  "simple postponement," it cannot escape preemption under HOLA.  Thus, the newly

26  revised and enacted section 2923.6 is preempted under federal law and cannot impose

27  any affirmative obligations on Wells Fargo.

28

### E.    The Application of HOLA Preempts The State Law Claims.

Plaintiffs' state law claims all contain similar allegations involving preempted areas.  The claims advance some iteration of a violation of a statutory obligation related to Plaintiffs' request for a loan modification or the non-judicial foreclosure on the Property.  In advancing those claims, Plaintiffs allege that Wells Fargo: (1) failed to comply with the Consent Judgment (Comp. ¶¶ 25-32, 82, 99-102), (2) charged inflated fees (Comp. ¶¶ 33-39), and (3) failed to reconsider Plaintiffs' application for a loan modification after a claimed "material change in their financial circumstances" (Comp. ¶¶ 65-76).  The second claim alleges a violation of Business & Professions Code section 17200, based on allegations that Wells Fargo violated the NMS, failed to comply with Civil Code section 2923.6, charges inflated fees, and foreclosed on the Property without legal justification.  (Comp. ¶ 82.)  The third claim for negligence asserts that Wells Fargo's conduct constituted a breach of duty allegedly owed to Plaintiffs.  (Comp. ¶¶ 97-101.)  Finally, Plaintiffs' allege that they are entitled to an accounting to determine the actual amount that they are in arrears on the loan.  (Comp., ¶¶ 108-116.)  All of the foregoing touch on preempted areas including the terms of credit, security property, disclosures, and the processing and servicing of mortgages.  12 C.F.R. §560.2(b) (4), (7), (9), (10).

Well-established case law confirms that such claims against Wells Fargo are preempted.  State law claims regarding the processing of a loan modification are also preempted.  For example, in *Sharma v. Wachovia*, 2011 U.S. Dist. LEXIS 1736 (E.D. Cal. Jan. 6, 2011), the plaintiff alleged various state law causes of action against Wachovia Mortgage arising out of, among other things, "Defendant['s] refus[al] to modify the loan."  *Id*. at *2.  Concerning HOLA preemption, the Court ruled: "All four claims are preempted by HOLA.  Each cause of action is based upon allegations pertaining to 'terms of credit', 12 C.F.R. § 560.2(b)(4), and 'processing, origination and servicing, of mortgages,' 12 C.F.R. § 560.2(b)(10).  Because all of Plaintiffs' state claims involve types of law listed in paragraph 560.2(b), all of Plaintiffs' claims

1    are preempted by HOLA and must be dismissed." *Id*. at *6.  The court granted

2    Wachovia's motion to dismiss with prejudice on the basis of HOLA preemption.

3    Indeed, numerous federal courts have found that HOLA preempts such claims against

4    a lender arising out of the processing of a loan modification application.  *Sato v.*

5    *Wachovia Mortg., FSB*, 2011 U.S. Dist. LEXIS 75418, *20  (N.D. Cal. July 13,

6    2011) (dismissing claim alleging that lender violated Civ. Code § 2923.6 by failing to

7    modify her loan; claim "clearly falls under the preemption provisions for 'processing,

8    origination, sale or purchase of ... mortgages' and 'terms of credit'" ); *Zarif vs. Wells*

9    *Fargo Bank, N.A.*, 2011 U.S. Dist. Lexis 29867, at *8-9 (S.D. Cal. Mar. 23, 2011)

10   ("As currently pled, each of Plaintiffs'  claims specifically challenge the processing

11   of Plaintiffs' loan modification application and servicing of Plaintiffs' mortgage, and

12   fall within the specific types of preempted state laws listed in § 560.2(b)(4) & (10).

13   Accordingly, each of Plaintiffs' claims are preempted by HOLA"); *DeLeon v. Wells*

14   *Fargo Bank*, N.A., 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010) (HOLA preempted

15   state law fraud claims related to allegations that plaintiffs "were given false

16   assurances that their loan modification with Wells Fargo would be approved and that

17   there would be no foreclosure while the loan modification process was pending").

18        Moreover, other state law claims addressing the loan servicing are also

19   preempted by HOLA.  State statutory and common laws punishing a lender for

20   making 'false financing statements' and fabricating loan documents are preempted

21   because such laws deal with, among other things, 'disclosures' under § 560.2(b)(9)."

22   *Tamayo v. World Savs. Bank, FSB, et al.*, 2009 U.S. Dist. LEXIS 73298, at *23 (S.D.

23   Cal. July 23, 2009) (emphasis added); *Amaral v. Wachovia Mortg. Corp.*, 692 F.

24   Supp. 2d 1226, 1238 (E.D. Cal. 2010) ("Plaintiffs' fraud claim alleges that Wachovia

25   'made false representations with the intent to induce plaintiffs to make monthly

26   mortgage payments to Wachovia.' (Doc. 24-2 at 8.) As applied, this claim is also

27   within § 560.2(b)(10) as it is based on, and seeks to impose liability for and regulate,

28   alleged false statements made in connection with the '[p]rocessing, origination

1   [and/or] servicing . . . of, . . . or participation in, a mortgage.").  Additionally, the

2   claims concerning foreclosure related fees and their disclosure fall squarely within

3   C.F.R. § 560.2(b)(5).  *See, Gomez v. Wachovia Mortg. Corp.*, 2010 U.S. Dist. LEXIS

4   3799, at **7-8 (N.D. Cal. Jan. 15, 2010).

5        For each of these reasons, Plaintiffs' state law claims regarding the servicing

6   and processing of the loan are preempted by HOLA, and each claim should therefore

7   be dismissed without leave to amend.

8   **VI.    PLAINTIFFS HAVE FAILED TO ESTABLISH ANY GROUNDS FOR**

9         **RELIEF UNDER CALIFORNIA CIVIL CODE § 2923.6.**

10       Plaintiffs' first claim alleges that Wells Fargo is in violation of Civil Code

11  section 2923.6 for the following reasons:  First, Plaintiffs contend that Wells Fargo

12  has failed to re-evaluate Plaintiffs for a loan modification despite being notified of a

13  "material change in Plaintiffs' financial circumstances," and second, because Wells

14  Fargo has initiated foreclosure proceedings in violation of the statutes that prohibit

15  "dual-tracking." (Comp. ¶¶ 68, 72.)  Despite these allegations, Plaintiffs have failed

16  to plead a viable claim against Wells Fargo for violation of section 2923.6.

17       **A.    The Newly Enacted Civil Code § 2923.6 Does Not Apply**

18           **Retroactively**

19       The newly enacted Home Owners Bill Of Rights ("HBOR"), as noted by the

20  California Department of Justice, Office of the Attorney General[2], "became law on

21  January 1, 2013 to ensure fair lending and borrowing practices for California

22  homeowners."  More importantly, the HBOR does not apply to conduct that occurred

23  prior to its effective date of January 1, 2013.  There is no provision in the law stating

24  that its provisions apply retroactively.  Indeed, it would not make any sense for it to

25  apply retroactively because it is meant to supplement and replace specific provisions

26

27  ───────────────
    [2] As noted in the accompanying Request for Judicial Notice, the Court may take judicial notice of
    official press releases from state agencies.  *See, e.g., Kagan v. Kearney*, 85 Cal. App. 3d 1010,
28  1016 (1978).

1   of Civil Code sections 2923.5 and 2924 *et seq.* that expired on December 31, 2012.

2   As one recent California Supreme Court case noted:

3           California courts comply with the legal principle that

4           unless there is an express retroactivity provision, a statute

5           will not be applied retroactively unless it is very clear

6           from extrinsic sources that the Legislature ... must have

7           intended a retroactive application.  California courts apply

8           the same general prospectivity principle as the United

9           States Supreme Court.  Under this formulation, a statute's

10          retroactivity is, in the first instance, a policy

11          determination for the Legislature and one to which courts

12          defer absent some constitutional objection to retroactivity.

13          But a statute that is ambiguous with respect to retroactive

14          application is construed ... to be unambiguously

15          prospective.

16   *Myers v. Philip Morris Cos., Inc.*, 28 Cal.4th 828, 841 (2002).

17          Here, almost all the alleged wrongful conduct by Wells Fargo took place prior

18   to January 1, 2013.  Plaintiffs allege that they started the application process for a

19   loan modification in 2011.  (Comp., ¶¶ 44-49.)  Even though the offer from Wells

20   Fargo for a loan modification was received by Plaintiffs in "mid-2013," it was in

21   response to an application that was submitted before January 1, 2013.  (Comp., ¶ 50.)

22   Plaintiffs' application was initially submitted in 2011.  Therefore, there is no legal

23   basis on which to impose statutory obligations upon Wells Fargo for actions that took

24   place before the statute was even in effect.

25          As for the dual tracking claim, Plaintiffs have failed to allege any activity by

26   Wells Fargo that would constitute a violation of this statutory ban.  The new

27   restrictions imposed under section 2923.6, preclude the lender from recording the

28   Notice of Default or a Notice of Sale before the new requirements regarding loan

1  modification have been satisfied.  As noted above, the Notice of Default was

2  recorded on November 11, 2010, while the Notice of Trustee's Sale was recorded on

3  December 3, 2012.  (RJN, Exhs. C, D.)  Plaintiffs have not alleged that a trustee's

4  sale has taken place after January 1, 2013.  Thus, Plaintiffs have not alleged any

5  conduct by Wells Fargo that is prohibited by section 2923.6 that took place after the

6  legislation went into effect at the beginning of this year.  In the absence of any such

7  conduct, Plaintiffs have failed to allege a violation of section 2923.6 regarding

8  activity that would constitute "dual-tracking."

9         **B.      Plaintiffs Did Not Fully Comply With Civil Code § 2923.6**

10        The other basis for their claim is that Wells Fargo has refused to reconsider

11  Plaintiffs' previous application for a loan modification, despite being informed that

12  there has been a material change in Plaintiffs' financial circumstances since they

13  were previously offered a loan modification in mid-2013.  (Comp., ¶ 53.)  However,

14  as noted by Plaintiffs, in addition to notifying the lender of a material change in

15  circumstances, section 2923.6(g) also requires that the change be "documented by the

16  borrower and submitted to the mortgage servicer." Plaintiffs' contend that

17  documentation of their "material change" was submitted with a letter from their

18  counsel dated June 12, 2013, and attached as Exhibit C to the Complaint.  (Comp., ¶

19  54.)  First, the letter fails to even reference any supporting documentation.  (Comp.,

20  Exh. C.)  Second, no documents were actually included with the letter sent to Wells

21  Fargo. *Id.*

22        Since Plaintiffs have failed to properly provide Wells Fargo with any

23  documentation of the material change in their financial circumstances, Wells Fargo is

24  not obligated to evaluate their application for a modification.  Thus this claim fails.

25        Additionally, this particular provision of section 2923.6 does not even apply to

26  Plaintiffs situation.  Based on the clear language in section 2923.6(g), the obligation

27  to reconsider Plaintiffs' application for loan modification based on a claimed material

28  change in financial circumstances applies where the borrowers' application for

1   modification has been denied.  That is not the case here.  Plaintiffs specifically

2   acknowledge that they were in fact offered a loan modification by Wells Fargo in

3   mid-2013.  (Comp., ¶ 50.)  They simply did not like the terms.  There is no legitimate

4   basis for Plaintiffs to now attempt to use section 2923.6(g) to force Wells Fargo to re-

5   evaluate Plaintiffs' application when they have already been offered a permanent

6   loan modification.

7       **C.      The Statute Does Not Allow Plaintiffs To Litigate The Outcome Of**

8               **Their Loan Modification Application.**

9       In their complaint, Plaintiffs ask the Court to substitute its loan servicing

10  analysis in place of Wells Fargo's determination.  As discussed below, that request is

11  contrary to the express provisions of HBOR and the federal regulatory scheme under

12  which Wells Fargo operates.

13      For starters, the HBOR is explicit that its provisions only require a process, and

14  that "[n]othing in the act . . .  shall be interpreted to require a particular result of that

15  process."  Cal. Civ. Code §2923.4(a).  This directive is carried through the statutory

16  scheme as the HBOR only requires that a borrower be afforded a process with no

17  guarantee of any determined outcome. For example, under Civil Code 2923.6(c), if a

18  borrower submits a complete application for a first lien loan modification, the

19  mortgage servicer must not proceed to foreclosure until issuing a determination on

20  that application.  Nowhere does the statute provide a right of action to challenge the

21  servicer's underlying determination or denial of the application.  Similarly, the statute

22  provides the borrower with the right to bring an appeal to the mortgage servicer.  Cal.

23  Civ. Code §2923.6(d).  Again, nothing in the statute requires any outcome to that

24  appeal process.  The statute also does not provide any private right of action for a

25  borrower to challenge the outcome of the appeal by asking a Court to substitute its

26  loan servicing determination for that of the lender or servicer.

27      Likely realizing the potential for abuse and gamesmanship through repeat

28  modification applications, the Legislature enacted an exception to the review

requirements "to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay." Cal. Civ. Code §2923.6(g). The mortgage servicer is expressly relieved of any obligation to "evaluate applications from borrowers who have already been evaluated . . . unless there has been a material change in the borrower's financial circumstances." Cal. Civ. Code §2923.6(g). Here, Plaintiffs were previously reviewed and offered a loan modification in mid-2013. (Comp., ¶ 50.) Plaintiffs did not accept the offered modification because the "payments were unaffordable." Subsequently, Plaintiffs claimed that they have had a material change in their financial circumstances, and that on June 12, 2013, notice of this change was provided to Wells Fargo. (Comp., ¶ 54.)

Consistent with other provisions of Cal. Civ. Code 2923.6, subsection (g) only requires that the mortgage servicer consider whether or not a borrower has demonstrated a material change in financial circumstances from the prior application. Nowhere does the statute provide a private right of action for a borrower to then litigate whether or not the mortgage servicer's determination was proper. Again, Civil Code 2923.4(a) provides a right to a process without any guaranteed result of that process. What Plaintiffs seek to do here is litigate the outcome of the HBOR modification process in direct contravention of Civil Code 2923.4(a). Simply put, nothing in the statute allows a borrower through litigation to seek a court imposed loan servicing outcome in place of the determination made by the lender or servicer.

Plaintiffs further argue for an erroneous interpretation of the statute in suggesting that a "denial" for failure to document a material change of financial circumstances affords a borrower a right to appeal under 2923.6(d). As a matter of statutory interpretation, Civil Code 2923.6(g) does not contain any right to appeal. More importantly, the allowance of a full review and appeal for every unsolicited application would defeat the purpose of 2923.6(g). The mortgage servicer is not required to even review a repeat application because it has already done so

1    previously.  The only exception is where a borrower documents a material change in

2    financial circumstances.  Here, Plaintiffs have failed to document a material change

3    in their financial circumstances from the prior application.  Under those

4    circumstances, the mortgage servicer "shall not be obligated to evaluate [the]

5    application. . . ."  Cal. Civ. Code §2923.6(g).

6          Finally, the Court should not accept Plaintiffs' invitation to substitute its loan

7    servicing judgment for that of the lender or servicer as such an act is contrary to the

8    regulatory scheme under which Wells Fargo operates.  In regards to loan

9    modification reviews, the change of circumstances test for repeat modification

10   reviews is derived from the federally administrated Home Assistance Modification

11   Program ("HAMP").  Among other provisions, the HAMP Handbook provides that

12   the servicer is required to create its own policies regarding changed circumstances:

13              Servicers must have an internal written policy which

14              defines what the servicer considers a change in

15              circumstance and outlines when a borrower will be

16              reevaluated for HAMP. Servicers may limit the number of

17              reconsideration requests in accordance with its written

18              policy and must apply the policy consistently for all

19              similarly situated borrowers. The servicer's policy must

20              allow a borrower to request re-evaluation based on a

21              change in circumstance at least one time.

22    (RJN, Exh. J, p. 72.)

23          The idea that a plaintiff can pursue litigation asking the Court to substitute its

24   own changed circumstances analysis is contrary to the very modification program

25   under which plaintiff seeks relief.  Cal. Civil Code § 2923.6(b) confirms this view in

26   stating that "it is the intent of the Legislature that the mortgage servicer offer the

27   borrower a loan modification or workout plan if such a modification or plan is

28   consistent with its contractual or other authority."  Since HAMP allows Wells Fargo

1  to create its own internal written policies on changed circumstances, it would be

2  inconsistent with HAMP and Cal. Civil Code § 2923.6(b) for a Court to substitute its

3  judgment under a policy for which Wells Fargo has independent responsibility.

4  Wells Fargo finally notes that under the HAMP Program, the Treasury Department

5  entrusts all compliance oversight to the Federal Home Loan Mortgage Corporation

6  (Freddie Mac).  A summary of that oversight is provided at page 33 of the HAMP

7  Handbook:

8                Treasury has engaged Freddie Mac as the Compliance

9                Agent for the elements of MHA that are addressed in this

10               Handbook. Freddie Mac has created an independent

11               division, Making Home Affordable-Compliance (MHA-

12               C) for this purpose. MHA-C conducts independent

13               compliance assessments and servicer reviews to evaluate

14               servicer compliance with the requirements of MHA.

15  (RJN, Exh. J, p. 33.)

16       Thus, not only is Wells Fargo's internal policy on changed circumstances

17  controlling, but the HAMP Program specifically charges oversight to Freddie Mac,

18  which includes compliance assessments and servicer reviews.  Plaintiffs' attempt

19  here to litigate Wells Fargo's change of circumstance determination cannot be

20  reconciled with the HAMP Program, exclusive Freddie Mac oversight of the HAMP

21  Program, or with the Civil Code § 2923.6(b) mandate that the mortgage servicer is

22  not required to do anything under HBOR that is inconsistent with the applicable

23  modification program.

24       As briefed above, Plaintiff concedes that Wells Fargo afforded them the

25  "process" contemplated by the HBOR.  Wells Fargo considered Plaintiffs' loan

26  modification application, and ultimately offered the borrowers a permanent loan

27  modification.  (Comp., ¶ 50.)  Nothing in the HBOR or any other law allows a private

28

1  right of action to then litigate Wells Fargo's loan servicing decisions on modification

2  applications.

3  **VII.   PLAINTIFFS' SECOND CLAIM FOR VIOLATION OF BUSINESS**

4         **AND PROFESSIONS CODE § 17200 FAILS.**

5         Plaintiffs set forth a laundry list of allegations that they contend were

6  "deceptive business practices with respect to mortgage loan servicing." (Comp., ¶

7  82.) However, an Unfair Competition Law claim requires the pleading of some

8  business practice that is forbidden by law, with particular facts showing ongoing

9  unlawful, unfair, and fraudulent business acts. *Korea Supply Co. v. Lockheed Martin*

10 *Corp.*, 29 Cal.4th 1134, 1143 (2003); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th

11 612, 619 (1993). Plaintiffs' allegations fail to plead such a claim.

12        As noted above, Plaintiffs' allegations related to enforcement of the NMS, are

13 not actionable by Plaintiffs, and thus, cannot serve as a basis for alleging an unfair

14 business practice. Next, Plaintiffs' cannot rely on the alleged violation of Civil Code

15 section 2923.6. The deficiencies in that claim are also detailed above. Plaintiffs fail

16 to provide any factual basis to support a claim that the foreclosure on the Property

17 were "premature," or that the fees and charges assessed by Wells Fargo in connection

18 with the foreclosure were not authorized by the loan documents or prohibited by

19 statute. Plaintiffs make the blanket accusation that Wells Fargo misrepresented the

20 "foreclosure status," and concealed information regarding fees," but fail to provide

21 any factual allegations to support these claims. (Comp., ¶ 82.)

22        There are no allegations that would support the fraudulent prong of the statute.

23 The "fraudulent" prong, post-enactment of Proposition 64, applies where a business

24 act or practice actually misleads a plaintiff. *See Hall v. Time, Inc.*, 158 Cal. App. 4th

25 847, 849 (2008). It must be shown that members of the public "are likely to be

26 deceived." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994). Further, a

27 plaintiff "must plead a claim for fraudulent behavior under the UCL with particularity

28 as required by Rule 9(b)." *Martinez v. Welk Group, Inc.*, 2011 U.S. Dist. LEXIS

58718, at *22 (S.D. Cal. June 2, 2011) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  Plaintiffs fail to satisfy Federal Rule of Civil Procedure Rule 9(b).  The names of the person or persons who allegedly made the fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written are all omitted. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Similarly, Plaintiffs' allegation fails to establish any "unlawful" or "unfair" activity by Wells Fargo.  The "unlawful" prong borrows statutory or constitutional claims from elsewhere. *Melegrito v. CitiMortgage Inc.*, 2011 U.S. Dist. LEXIS 60447, at * 24 (N.D. Cal. June 6, 2011).  "A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law." *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (citations omitted).  The "unfair" prong applies when the practice at issue allegedly violates "the policy or spirit of [anti-trust] laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition."  *Cel-Tech Comm'cns, Inc., v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999).  Even a cursory review of the Complaint reveals that it contains no allegations which constitute either unlawful or unfair practices.

Plaintiffs rely on defective statutory and common law claims in the Complaint to support the UCL claim.  As noted herein, all of Plaintiffs' claims are deficient.  Since the UCL claim relies on defective statutory and common law claims, the claims are not saved by recasting them as claims for unfair competition.

In addition, Plaintiffs cannot show that they satisfy the causation requirement of the UCL.  To bring a claim under the UCL, a plaintiff "must have suffered an injury in fact and lost money or property as a result of … alleged unfair or fraudulent practices."  Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010).  Plaintiffs cannot make this necessary showing because the ultimate reason for the delinquency was their overreach on loan they could not afford.

1   Plaintiffs opted to seek a loan modification that Wells Fargo did not guarantee, but

2   which was eventually offered to Plaintiffs, which they rejected.  In a similar situation,

3   *DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296 (N.D. Cal. 2011),

4   held that the borrowers did not state a claim for violation of UCL:

5               The Court cannot reasonably infer that Wells Fargo's

6               alleged misrepresentations resulted in the loss of

7               Plaintiffs' home.  Rather, the facts alleged suggest that

8               Plaintiffs lost their home because they became unable to

9               keep up with monthly payments and lacked the financial

10              resources to cure the default. Although the Court

11              understands Plaintiffs' frustrations with Wells Fargo's

12              seemingly contradictory statements and actions, it does

13              not appear that this conduct resulted in a loss of money or

14              property.

15  *DeLeon*, at *19-*22.  For the same reasons set forth in *DeLeon*, Plaintiffs fail to state

16   a valid UCL claim.

17          Finally, a "[P]rivate person has no standing under the UCL unless that person

18   can establish that the injury suffered and the loss of property or money resulted from

19   conduct that fits within one of the categories of 'unfair competition'. . ." *Daro v.*

20   *Superior Court*, 151 Cal. App. 4th 1079, 1098 (2007).  Plaintiffs have not alleged,

21   nor have they suffered, an injury in fact or lost money or property as a result of Wells

22   Fargo's alleged unfair competition or unfair business practices.  There is an absence

23   of any causation of actual loss. *See Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 856

24   (2008).  If Plaintiffs suffered any loss it was caused by their failure to repay the loan

25   as promised – not by Wells Fargo's alleged conduct.

26   **VIII.  PLAINTIFFS' THIRD CLAIM FOR NEGLIGENCE FAILS**

27          Plaintiffs allege that Wells Fargo "acting as Plaintiffs'

28   lenders/servicers/trustees, had a reasonable duty to exercise reasonable care and skill"

1   with respect to the loan documents, the status of the foreclosure actions, and the loan

2   modification sought by Plaintiffs.  (Comp., ¶ 97.)  Additionally, Plaintiffs allege that

3   Wells Fargo breached its duty by failing to comply with the NMS, failing to

4   "properly and fairly" evaluate Plaintiffs' application for any and all alternatives to

5   foreclosure, failing to have sufficient staff to handle and process applications for loan

6   modifications, and failing to notify Plaintiff[s] about the foreclosure.  (Comp., ¶ 101.)

7   None of these allegations support a viable claim for negligence against Wells Fargo.

8          The determination of whether a duty exists is primarily a question of law."

9   *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988).  "[A]bsent a duty, the defendant's

10  care, or lack of care, is irrelevant."  *Software Design and Application Ltd. v. Hoeffer*

11  *& Arnolt Inc.*, 49 Cal. App. 4th 472, 481 (1996).  In *Nymark v. Heart Fed. Sav. &*

12  *Loan Assn.*, the court explained: "[A]s a general rule, a financial institution owes no

13  duty of care to a borrower when the institution's involvement in the loan transaction

14  does not exceed the scope of its conventional role as a mere lender of money."  231

15  Cal.App.3d 1089, 1096 (1991).  All of the conduct allegedly undertaken by Wells

16  Fargo, with respect to the loan, the foreclosure, the modification, were all directly

17  done by Wells Fargo well within its "conventional role as a mere lender of money."

18  Plaintiffs have failed to allege any conduct by Wells Fargo that could reasonable be

19  found to fall outside that scope.

20          Additionally, even though it was offered, Wells Fargo is not obligated to

21  provide Plaintiffs with a loan modification, thus Plaintiffs are not able to assert a

22  negligence claim based on Wells Fargo's refusal to modify their loan.  Plaintiffs'

23  claim is based on the erroneous belief that they are "entitled" to a loan modification

24  with terms that they consider affordable or "equitable."  This is simply not true.  A

25  borrower has no right to insist on a change of loan terms after the lender has funded

26  the loan.  *See Hellbaum v. Lytton S&L*, 274 Cal. App. 2d 456, 460 (1969); overruled

27  on other grounds, by *Wellenkamp v. Bank of America*, 21 Cal. 3d 943, 977 (1978);

28  *see Domnie v. Saxon Mortg.*, 2010 U.S. Dist. LEXIS 76816, at **4-5 (N.D. Cal. Jul.

14, 2010) (lender had no duty to modify loan).  With respect to Plaintiffs' application for a loan modification, Wells Fargo ultimately had absolute discretion to deny or approve a modification.  Plaintiffs have failed to plead any facts that would establish a legal duty to provide them with a loan modification, let alone a modification with terms that they determine are affordable or equitable.

Plaintiffs also fail to allege a breach of any duty by Wells Fargo or that such breach was the direct cause of Plaintiffs' alleged damages.

Furthermore, this claim for relief is defective because it does not plead any legally cognizable damages caused by the alleged breach.   In fact the claim just states that "plaintiffs have suffered and continue to suffer" damages. (Comp. ¶ 105.) The claim itself does not identify any particular special or general damages. The only other damages alleged are attorney's fees in connection with bringing this action. (Comp. Prayer at ¶ 8.)  These are not damages and are only recoverable as costs where permitted by statute.  *See*, *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995); Civ. Code § 1717.

## IX.   **PLAINTIFFS DO NOT HAVE A RIGHT TO AN ACCOUNTING.**

To state a claim for an accounting, a plaintiff must plead the existence of a fiduciary relationship "or other circumstances appropriate to the remedy" and that a balance due from the defendants can only be ascertained by an accounting.  5 Witkin, *California Procedure*, Pleading, § 820 (5th Ed. 2008); *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) ("A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting"); *Stilwell v. Trutanich*, 178 Cal. App. 2d 614 (1960) (same); *Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 6 (1950); *Brea v. McGlashan*, 3 Cal. App. 2d 454 (1934).

Traditionally, courts permit an accounting in cases involving trusts, agency relationships, partnerships and joint ventures. 5 Witkin, *California Procedure*,

Pleading, § 821 (5th Ed. 2008); *San Pedro Lumber Co. v. Reynolds*, 111 Cal. 588, 595 (1896) (accounting claim allowed where defendant was the trusted agent of plaintiff, acting in a fiduciary capacity, and having for a long period of time the entire charge and control of plaintiff's business).  In this case, Plaintiff fails to allege a "fiduciary relationship" or "other circumstances" with respect to Wells Fargo.  As a matter of law, a lender does not have a fiduciary relationship with its borrowers. *Nymark,*  231 Cal. App. 3d at 1093 ("The relationship between a lender and its borrower-client is not fiduciary in nature.");  *Price v. Wells Fargo Bank, Price v. Wells Fargo Bank,* 213 Cal. App. 3d at 476 (1989).  Hence, Plaintiffs cannot state an accounting claim.

Furthermore, the requirement that a balance is owed to *Plaintiffs* is lacking.  5 Witkin, *California Procedure*, *Pleading*, § 820 (5th ed. 2008).  In fact, Plaintiffs admit that the "actual amount of arrearages on Plaintiffs' loan and the actual amount of money due from Plaintiffs to Defendants," is unknown.  (Comp., ¶ 116.)  And, indisputably, the owner of the Property owes Wells Fargo hundreds of thousands of dollars, not vice versa.  *See* RJN, Exhs. A, B (loan documents).  Finally, "[a] suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law."  *St. James Church of Christ Holiness v. Superior Court*, 135 Cal.App.2d 352, 359 (1955).

Furthermore, Plaintiffs seek an accounting of the actual amount of the arrearages on their loan. (Comp. ¶ 112.)  This is improper.  Plaintiffs fail to plead that they made a request for an itemization, or that Wells Fargo refused to respond to Plaintiffs' request.  Failing to avail itself of the opportunity to obtain information relating to the amount in arrears, Plaintiffs cannot now seek to halt the foreclosure process, authorized by statute, simply by asserting a claim that they dispute the amount in arrears that appears in the letter informing them that Wells Fargo intends to commence foreclosure against the Property.

1

## X.   __CONCLUSION__

2          For the foregoing reasons, Wells Fargo requests that the Motion to Dismiss be

3   granted as to all claims for relief, without leave to amend, and that a dismissal be

4   entered in favor of Wells Fargo and against Plaintiffs, with prejudice.

5

6                                            Respectfully submitted,

7   Dated:  September 6, 2013               ANGLIN FLEWELLING RASMUSSEN
                                                CAMPBELL & TRYTTEN, LLP
8

9                                           By:  _____/s/  Dean A. Reeves_____
                                                    Dean A. Reeves
10                                                  dreeves@afrct.com
                                            Attorneys for Defendant
11                                          WELLS FARGO BANK, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF MOTION AND MOTION BY WELLS FARGO BANK, N.A. TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

*Counsel for Plaintiffs:*

Joseph R. Manning, Jr., Esq.
Email: manningjr@aol.com
THE LAW OFFICES OF JOSEPH R. MANNING, JR., APC
4667 MacArthur Boulevard, # 150
Newport Beach, CA 92660
T: (949) 200-8755 | F: (866) 843-8308

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on September 6, 2013.

| Lina C. Velasquez | */s/ Lina C. Velasquez* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |